Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:      516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

<div align="center">

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

</div>

| | |
|---|---|
| GLENN CASEY, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (e) of the Securities Exchange Act of 1934 |
| VIDLER WATER RESOURCES, INC., MAXIM C.W. WEBB, DOROTHY TIMIAN-PALMER, NICOLE WEYMOUTH, ERIC H. SPERON, and GREGORY BYLINSKY, | (2) Violation of § 14 (d) of the Securities Exchange Act of 1934 |
| | (3) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Glenn Casey ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

<div align="center">

**SUMMARY OF THE ACTION**

</div>

1.     Plaintiff brings this stockholder action against Vidler Water Resources, Inc. ("Vidler" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14 (d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to D.R. Horton, Inc. ("Parent" or "D.R.

Horton") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an April 13, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, D.R. Horton will acquire all the outstanding shares of Vidler common stock for $15.75 per share in cash. As a result, Vidler will become an indirect wholly-owned subsidiary of D.R. Horton.

3.     Thereafter, on April 27, 2022, Vidler filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons.  Significantly, the Recommendation Statement describes an insufficient process with only one goal in mind – to sell the Company to D.R. Horton.

5.     Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.     In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement on April 27, 2022, with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Vidler shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among

other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Vidler, provided by Vidler to the Company's financial advisors Kroll, LLC (Duff & Phelps Opinion Practice) ("Duff & Phelps"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Duff & Phelps and provided to the Company and the Board.

7.      Accordingly, this action seeks to enjoin the Proposed Transaction.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of Florida and, at all times relevant hereto, has been a Vidler stockholder.

10.     Defendant Vidler provides potable water resources to communities in the southwestern United States. Vidler is incorporated in Delaware and has its principal place of business at 3480 GS Richards Blvd, Suite 101, Carson City, NV 89703.  Shares of Vidler common stock are traded on the New York Stock Exchange under the symbol "VWTR."

11.     Defendant Maxim C.W. Webb ("Webb") has been a Director of the Company at all relevant times.  In addition, Webb serves as the Executive Chairman of the board as well as the company's Chief Financial Officer ("CFO").

12.     Defendant Dorothy Timian-Palmer ("Timian-Palmer") has been a director of the Company at all relevant times. In addition, Timian-Palmer serves as the Company's Chief Executive Officer ("CEO").

13.     Defendant Nicole Weymouth ("Weymouth") has been a director of the Company at all relevant times.

14.     Defendant Eric H. Speron ("Speron") has been a director of the Company at all relevant times.

15.     Defendant Gregory Bylinsky ("Bylinsky") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 11 - 15 are collectively referred to as the "Individual Defendants."

17.     Non-Party D.R. Horton operates as a homebuilding company in East, North, Southeast, South Central, Southwest, and Northwest regions in the United States. Shares of D.R. Horton common stock are traded on the New York Stock Exchange under the symbol "DHI."

18.     Non-Party Merger Sub is a wholly owned subsidiary of D.R. Horton created to effectuate the Proposed Transaction.

<div align="center">

**JURISDICTION AND VENUE**

</div>

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14 (d), and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

22.    Vidler Water Resources, Inc., together with its subsidiaries, provides potable water resources to communities in the southwestern United States. It engages in selling its water rights and storage credits in Arizona, Colorado, Nevada, and New Mexico. The company sells its water rights to real estate developers, alternative energy facilities, or other commercial and industrial users, as well as to water utilities, municipalities, and other government agencies; and sells its stored water to state agencies, commercial developers, or municipalities for their commercial projects or communities. It also leases and sells water assets and land. The company was formerly known as PICO Holdings, Inc. and changed its name to Vidler Water Resources, Inc. in March 2021. Vidler Water Resources, Inc. was incorporated in 1981 and is based in Carson City, Nevada.

23.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the December 31, 2021 press release announcing its 2021 Q4 financial results, the Company reported that shareholders' equity was $208.6 million ($11.39 per share) at December 31, 2021, compared to $178.3 million ($9.59 per share) at December 31, 2020.

24.    Speaking on the positive results, CEO Defendant Timian-Palmer discussed the likely success of continued asset sales by explaining "We are actively marketing all our LTSC in both the Phoenix AMA and in our Harquahala storage facility and we are in discussions with numerous parties who require water supplies for their projects' development."

25.    The promise and financial results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Vidler.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

26.     Despite this upward trajectory, the Individual Defendants have caused Vidler to enter into the Proposed Transaction without providing requisite information to Vidler stockholders such as Plaintiff.

***The Flawed Sales Process***

27.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28.     Notably, while the Recommendation Statement indicates that a "Strategic Transaction Committee" composed of independent directors was created to run the sales process, the Recommendation Statement fails to indicate if this Strategic Transaction Committee had the power to veto or approve potential strategic alternatives.

29.     The Recommendation Statement also notes that the Board engaged multiple financial advisors during the sales process, including BofA Securities, Inc. ("BofA"). Notably, despite BofA not providing a fairness opinion or, seemingly conducting any financial analyses presented to the Company Board, it will receive compensation in the amount of $4.0 million for its services related to the sales process leading to the Proposed Transaction. The Recommendation Statement fails to provide sufficient information as to why the Board did not seek out a sole financial advisor who could provide such analyses.

30.     In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including D.R. Horton, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and any potentially interested third parties, including D.R. Horton, throughout the sales process, if any, would fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in a misleading manner.

***The Proposed Transaction***

32.     On April 14, 2022, Vidler and D.R. Horton issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **ARLINGTON, Texas and CARSON CITY, Nevada** (April 14, 2022)—D.R. Horton, Inc. (NYSE: DHI) ("D.R. Horton"), America's Builder, and Vidler Water Resources, Inc. (Nasdaq: VWTR) ("Vidler") announced today that the two companies have entered into a definitive merger agreement pursuant to which D.R. Horton will acquire Vidler for $15.75 per share in an all-cash transaction which represents a 19% premium to the 90-day volume-weighted average share price and a 39% premium to Vidler's book value of equity.
>
> Vidler owns a portfolio of premium water rights and other water-related assets in the southwestern United States in markets where D.R. Horton operates that require water for development, but face a lack of adequate supply. Vidler's highly experienced management team has a proven track record of accessing, developing and realizing value for premium water assets while expertly navigating local regulations and working with governmental entities. Post-closing, Vidler will operate as a separate operating division within D.R. Horton.
>
> Under the terms of the merger agreement, D.R. Horton, through its directly owned acquisition subsidiary, will commence a tender offer to acquire all outstanding shares of Vidler for $15.75 per share.     Upon the successful completion of the tender offer, D.R. Horton's acquisition subsidiary will be merged into Vidler, and any remaining shares of Vidler will be canceled and converted into the right to receive the same consideration payable pursuant to the tender offer. Following completion of the merger, the common stock of Vidler will no longer be listed for trading on the Nasdaq. The total equity value of the transaction is approximately $291 million, and the transaction is expected to close during the second calendar quarter of 2022 subject to customary closing conditions.

***Potential Conflicts of Interest***

33.     The breakdown of the benefits of the deal indicates that Vidler insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Vidler.

34.     Notably, Company insiders, currently own large, illiquid portions of Company stock, stock option, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name of Executive Officer or Director | Cash Consideration for Shares ($) | Cash Consideration for PBOs ($) | Cash Consideration for RSUs ($) | Total Cash Consideration in connection with the Offer and the Merger ($) |
|---|---|---|---|---|
| *Directors* | | | | |
| Maxim C.W. Webb [(1)] | N/A | N/A | N/A | N/A |
| Dorothy A. Timian-Palmer [(2)] | N/A | N/A | N/A | N/A |
| Eric H. Speron | $13,722,408.00 | — | — | $13,722,408.00 |
| Gregory E. Bylinsky | $16,528,554.00 | — | $432,778.50 | $16,961,332.50 |
| Nicole L. Weymouth | — | — | $316,543.50 | $    316,543.50 |
| *Executive Officers* | | | | |
| Maxim C.W. Webb | $ 1,340,829.00 | — | $643,781.25 | $ 1,984,610.25 |
| Dorothy A. Timian-Palmer | $    212,105.25 | — | $786,870.00 | $    998,975.25 |

| Name of Executive Officer or Director | Number of Shares | Cash Consideration for Shares ($) |
|---|---|---|
| *Directors* | | |
| Maxim C.W. Webb [(1)] | N/A | N/A |
| Dorothy A. Timian-Palmer [(2)] | N/A | N/A |
| Eric H. Speron [(3)] | 871,264 | $    13,722,408.00 |
| Gregory E. Bylinsky [(4)] | 1,049,432 | $    16,528,554.00 |
| Nicole L. Weymouth | — | — |
| *Executive Officers* | | |
| Maxim C.W. Webb | 85,132 | $    1,340,829.00 |
| Dorothy A. Timian-Palmer | 13,467 | $    212,105.25 |

| Name of Executive Officer or Director | Number of Shares Subject to Company RSUs | Cash Consideration for Company RSUs ($) |
|---|---|---|
| *Directors* | | |
| Maxim C.W. Webb [(1)] | N/A | N/A |
| Dorothy A. Timian-Palmer [(2)] | N/A | N/A |
| Eric H. Speron | — | — |
| Gregory E. Bylinsky | 27,478 | $    432,778.50 |
| Nicole L. Weymouth | 20,098 | $    316,543.50 |
| *Executive Officers* | | |
| Maxim C.W. Webb | 40,875 | $    643,781.25 |
| Dorothy A. Timian-Palmer | 49,960 | $    786,870.00 |

35.     In addition, certain employment agreements with certain Vidler executives, entitle such executives to severance packages should their employment be terminated under certain

circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follow:

### Golden Parachute Compensation

| Name[1] | Cash[2] ($) | Equity[3] ($) | Perquisites/ Benefits[4] ($) | Total ($) |
|---|---|---|---|---|
| Maxim C.W. Webb | $1,024,424.00 | $643,781.25 | $35,742.00 | $1,703,947.25 |
| Dorothy A. Timian-Palmer | $1,248,867.00 | $786,870.00 | $16,142.00 | $2,051,879.00 |

36.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

37.     Thus, while the Proposed Transaction is not in the best interests of Vidler, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

### *The Materially Misleading and/or Incomplete Recommendation Statement*

38.     On April 27, 2022, the Vidler Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39.     Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose:

a.  Adequate information regarding the specific power of the Transactions Committee, including whether the committee had veto power over potential strategic alternatives;

b.  Adequate information as to the Board's decision to engage multiple financial advisors;

c.  Whether the terms of any confidentiality agreements entered during the sales process between Vidler on the one hand, and any other third party (including D.R. Horton), if any, on the other hand, differed from one another, and if so, in what way;

d.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including D.R. Horton) throughout the sales process, if any, would fall away; and

e.  The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Vidler's Financial Projections*

40.  The Recommendation Statement fails to provide material information concerning financial projections for Vidler provided by Vidler management and relied upon by Duff & Phelps in its analyses.  The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

41.     Notably, in connection with its fairness opinion rendered to the Company Board regarding the Proposed Transaction, Duff & Phelps notes that it reviewed, "other internal documents relating to the history, current operations, and probable future outlook of the Company provided by Company Management, including management's cash flow projections."

42.     The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Vidler management provided to the Board and Duff & Phelps.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

43.     With regard to *Certain Company Summary Financial Projections* for Vidler prepared by Vidler management, the Recommendation Statement fails to disclose material line items for all projection metrics utilized in Duff & Phelps analyses, as follows:

      a.  The Recommendation Statement fails to provide the specific sub-metrics to determine future cash flows for each listed project; and

      b.  The Recommendation Statement fails to provide the inputs used underlying the utilized assumption that the "Cash flow for Fish Springs Ranch is projected to increase 2% per year from 2048 through 2054, assuming lessee exercises its options under the solar land lease."

44.     The Recommendation Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46.     Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Duff & Phelps's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction.  As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Duff & Phelps*

47.     In the Recommendation Statement, Duff & Phelps describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48.     With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose:

    a.   The specific inputs and assumptions used to determine the utilized discount rate range of 5.0% to 35.0% with regard to cash flow;

    b.   The Company's overhead expenses and taxes, each on an aggregate basis utilized, and the specific inputs used to determine them;

    c.   The specific inputs and assumptions used to determine the utilized discount rate range of 6.0% to 8.0% with regard to overhead expenses and taxes;

    d.   The utilized values for the estimate of the present value of future management bonuses utilized, and the specific inputs used to determine them; and

49.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

50.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and

related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Vidler stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

<div align="center">

**FIRST COUNT**

**Violations of Section 14(e) of the Exchange Act**

**(Against All Defendants)**

</div>

51.     Plaintiff repeats all previous allegations as if set forth in full herein.

52.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

53.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]."

54.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

55.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

56.     The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

57.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

58.     Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Individual Defendants)

59.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

60.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

61.     Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

62.     SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

63.     Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

64.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

65.     Plaintiff has no adequate remedy at law.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

66.     Plaintiff repeats all previous allegations as if set forth in full herein.

67.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Vidler's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

70.     The Individual Defendants acted as controlling persons of Vidler within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Vidler to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Vidler and all of its employees.  As alleged above, Vidler is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to disseminate a Recommendation Statement that Complies with the Exchange Act and does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 2, 2022

**BRODSKY & SMITH**

By: ______________________
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*